UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA WESLEY-WILLIS, <br><br>                Plaintiff, <br><br> v. <br><br> CAJON VALLEY UNION <br> SCHOOL DISTRICT; and DOES <br> 1–10, inclusive, <br><br>                Defendant. | Case No.: 17cv1662-WQH-WVG <br><br> **Order** |

HAYES, Judge:

The matter before the Court is the motion to dismiss filed by Defendant Cajon Valley Union School District. (ECF No. 20).

I.     **Procedural Background**

On March 26, 2018, Plaintiff Christina Wesley-Willis ("Wesley-Willis") filed a Second Amended Complaint ("SAC") against Defendant Cajon Valley Union School District ("School District") and Does 1–10, inclusive. (ECF No. 18).

On April 9, 2018, the School District filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. (ECF No. 20). On April 30, 2018, Wesley-Willis filed a response in opposition to the motion. (ECF No. 21). On May 7, 2018, the School District filed a reply. (ECF No. 22).

## II. Factual Allegations of the Second Amended Complaint

Wesley-Willis is a "member of various protected classes including but not limited to race (black), gender (female), age (45+) and disability." (ECF No. 18 at ¶ 6). In 2005, Wesley-Willis was hired by the School District as an assistant principal and later promoted to the role of principal in 2007. In 2016, Wesley-Willis was "moved to an assistant principal position . . . and further removed as a site principal at Johnson Elementary School." *Id.* ¶ 10. Wesley-Willis was the "only female black principal" or assistant principal in the School District "during the time in question." *Id.* ¶ 21.

The School District took various allegedly discriminatory actions towards Wesley-Willis prior to her demotion. In 2015, the superintendent demanded that Wesley-Willis apologize to her staff members in response to "unsubstantiated complaints" made against her and did not permit her to address the staff about the alleged concerns. *Id.* ¶ 11. Male administrators with multiple negative site surveys and grievances were not demoted or released as administrators. *Id.* ¶ 12. Male administrators were "advised of the negative comments and . . . given the opportunity to address staff members . . . and to make corrections." *Id.*

In June 2015, the School District superintendent denied Wesley-Willis's request for an assistant principal at her site which detrimentally affected Wesley-Willis's ability to perform her job. *Id.* ¶ 14. Male principals had "access . . . to assistant principals" and administrative assistance at schools with "less disciplinary issues, less minority under-privileged enrollment and higher overall test scores." *Id.*

In 2015 and 2016, Wesley-Willis suffered work-related injuries to her shoulder, neck and lower back. *Id.* ¶ 17. The School District was advised that Wesley-Willis "was not to be assigned duties that might cause further injuries to her" and that Wesley-Willis was not to have physical contact with students. *Id.* The School District failed to accommodate Wesley-Willis for her work-related disability. The School District placed Wesley-Willis in "hazardous positions" and denied assistance in dealing with students with violent behavioral issues. *Id.* ¶ 31

The School District relied on false complaints and statements from various teachers to "force [Wesley-Willis] out of the District." *Id.* ¶ 18. School District employees "improperly . . . obtain[ed] private materials from [Wesley-Willis's] office and thereafter disseminate[d] false . . . statements about [her] as a means of discrediting [her]." *Id.* ¶ 19. Board members of the School District made public statements "that [Wesley-Willis] would be gone from the District[.]" *Id.* ¶ 21. In July 2016, the School District requested that Wesley-Willis sign a resignation letter. During this process, the superintendent "made reference to her race, as being an asset in finding another position." *Id.* ¶ 25. Wesley-Willis was was demoted to an assistant principal and relieved of her duties as acting principal. "[Wesley-Willis] was assigned lesser administrative duties with limited access to support and advancement." *Id.* ¶ 26.

Around November of 2016, Wesley-Willis was "pre-approved to attend a human resource seminar[.]" *Id.* ¶ 30. A senior School District representative asked her to leave the event, despite her invitation from the superintendent. *Id.* Wesley-Willis was denied promotion and assignment to vacant positions in the School District "in favor of non-minority individuals, who lacked experience, credentials and/or training" in comparison to Wesley-Willis. *Id.* ¶ 32.

Wesley-Willis filed complaints with  the California Department of Fair Employment and Housing and the United States Equal Employment Opportunity Commission. The School District conducted an unreasonable and untimely investigation. "For the 2017/2018 academic year, [Wesley-Willis], despite being unable to return to work was assigned a 'counselor position' within the District" and has been "demoted in position, stature, and pay." *Id.* ¶ 59.

Wesley-Willis brings the following causes of action against the School District: violation of the Civil Rights Act, 42 U.S.C. § 2000 et seq.; violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; violation of Civil Rights Act - hostile work environment, 42 U.S.C. § 2000 et seq.; and five claims arising under state law.

///

### III.   Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal for lack of subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).   "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).   In a facial attack on subject matter jurisdiction, the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* (citation omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## IV. Eleventh Amendment Immunity

The School District moves the Court for an order dismissing the SAC for lack of subject matter jurisdiction on the grounds that the School District is immune from suit in federal courts under the Eleventh Amendment. The School District asserts that it is an "arm of the state and state actor" to which Eleventh Amendment immunity attaches. (ECF No. 20-1 at 10).

Wesley-Willis contends that the Eleventh Amendment "does not immunize local governments from all private suits" and exceptions to immunity are applicable in this action. (ECF No. 21). Wesley-Willis contends that Congress has abrogated state immunity with respect to the ADA and the Civil Rights Act of 1964. Wesley-Willis contends that sovereign immunity is not a bar to employment discrimination suits in which a plaintiff seeks injunctive relief. Wesley-Willis contends that sovereign immunity has been waived through the state's acceptance of federal funds. Wesley-Willis contends that the Court can exercise supplemental jurisdiction over the state law claims.

The Eleventh Amendment to the United States Constitution provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment precludes federal court jurisdiction "over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Eleventh Amendment immunity extends to state agencies and arms of the state. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250 (9th Cir. 1992).

17cv1662-WQH-WVG

The Ninth Circuit Court of Appeals has concluded that California school districts are arms of the state entitled to sovereign immunity under the Eleventh Amendment. *Sato v. Orange Cty. Dep't of Educ.,* 861 F.3d 923, 934 (9th Cir. 2017) (concluding that "California school districts . . . remain arms of the state and continue to enjoy Eleventh Amendment immunity" following passage of state legislation which "reformed the financing and governance of California public schools"), *cert. denied*, 138 S. Ct. 459 (2017); *Belanger*, 963 F.2d at 251 ("[U]nder California law, the school district is a state agency . . . . Thus, the school district is protected by the Eleventh Amendment"). In this case, the School District, a California school district, is an arm of the state protected by Eleventh Amendment immunity, absent an applicable exception.

There are three exceptions to the general rule that the Eleventh Amendment protects states from suits brought by citizens in federal court.

> First, a state may waive its Eleventh Amendment defense. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks . . . prospective injunctive relief."

*Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 817–18 (9th Cir. 2001), *amended*, 271 F.3d 910 (9th Cir. 2001) (citations omitted).

> In recent years, the Supreme Court has imposed a two-part inquiry for determining whether Congress acts within its powers when it attempts to abrogate the states' Eleventh Amendment immunity. *See Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. 1114. First, courts must ask "whether Congress unequivocally expressed its intent to abrogate" the states' immunity in the legislation itself. *Kimel,* 528 U.S. at 73, 120 S.Ct. 631. If the answer to this first inquiry is yes, then courts must next ask "whether Congress acted pursuant to a valid grant of constitutional authority." *Id.*

*Douglas*, 271 F.3d at 818.

### a. Title VII of the Civil Rights Act of 1964

Wesley-Willis brings the first and third causes of action for violations of the Civil Rights Act. Wesley-Willis does not identify the Title of the Civil Rights Act under which

she brings her claims; however, the alleged facts describe discrimination in the employment context. The Court construes Wesley-Willis's first and third causes of action to arise under Title VII, which prohibits discrimination in hiring and treatment of employees. *See* 42 U.S.C. § 2000e-2.

The Supreme Court has determined that Congress has validly and unequivocally abrogated the states' Eleventh Amendment immunity from suits brought under Title VII. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976) ("[I]n this Title VII case the 'threshold fact of congressional authorization,' . . . to sue the State as employer is clearly present."); *see also Cerrato v. San Francisco Comm. Coll. Dist.*, 26 F.3d 968, 976 (9th Cir. 1994) ("The Supreme Court has held that Congress has abrogated the Eleventh Amendment with respect to Title VII claims."). Accordingly, Wesley-Willis's causes of action under Title VII against the School District, the first and third causes of action in the SAC, are not barred by the Eleventh Amendment.

### b. Americans with Disabilities Act

Wesley-Willis brings her second cause of action against the School District under the ADA. (ECF No. 18 at ¶¶ 77–83). Wesley-Willis alleges that she was an employee of the School District during the time of the events giving rise to her claims. *Id.* ¶¶ 7–71. Wesley-Willis alleges that the School District failed to make accommodations for her disability and discriminated against her because of her disability during her employment with the School District. *Id.* ¶¶ 79–81. Based on the allegations of the SAC, the Court construes this claim to arise under Title I of the ADA, which prohibits discrimination against disabled individuals in the employment context. *See* 42 U.S.C. § 12112.

In *Board of Trustees of the University of Alabama v. Garrett*, the Supreme Court held that Congress did not constitutionally abrogate the states' Eleventh Amendment immunity from suits brought under Title I of the ADA. 531 U.S. 356, 360, 374 (2001); *see also Douglas*, 271 F.3d at 818, 821 ("In *Garrett*, the Supreme Court held that claims brought under Title I of the ADA against states for money damages are barred by the Eleventh Amendment."). Congress has not abrogated California's immunity from suits

17cv1662-WQH-WVG

brought under Title I of the ADA.[1]  The School District enjoys Eleventh Amendment immunity with respect to Wesley-Willis's cause of action under Title I of the ADA.

Pursuant to the *Ex parte Young* doctrine, Eleventh Amendment immunity "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  In this case, Wesley-Willis brings suit only against the School District.  Wesley-Willis has not named a state official.  Accordingly, *Ex parte Young* is inapplicable and her claim under the ADA is barred by the Eleventh Amendment in its entirety.  *Douglas*, 271 F.3d at 821 n.6 ("Because Douglas has not named a state official as a defendant in this suit, the *Ex parte Young* doctrine does not apply.).

### c.  State Law Claims

Wesley-Willis brings the following state law causes of action against the School District: violation of the California Fair Employment and Housing Act, breach of contract, and breach of the covenant of good faith and fair dealing. (ECF No. 18).

The Eleventh Amendment bars suits against nonconsenting states in federal court, including suits that arise under state law.  The Supreme Court of the United States has stated, "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("the Eleventh Amendment

---

[1] The School District has raised Eleventh Amendment immunity in this motion to dismiss and has not waived immunity with respect to this action. *See Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001) ("However, a state does not waive Eleventh Amendment immunity merely by defending in federal court. Instead, waiver turns on the state's failure to raise immunity during the litigation."). Further, Wesley-Willis fails to demonstrate that the State of California has waived its immunity to ADA suits under Title I by a "clear declaration that it intends to submit itself to [federal] jurisdiction."  *Id.* (citing *Coll. Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 537 U.S. 666, 675 (1999)).

deprives federal courts jurisdiction to order state actors to comply with state law"). As an arm of the state, the School District is immune from suit under state law in federal court. Further, the *Ex Parte Young* doctrine, which permits some suits otherwise barred by the Eleventh Amendment where the relief sought is declaratory or injunctive, is inapplicable to state law claims. *See Halderman*, 465 U.S. at 106.

Wesley-Willis contends that federal courts may exercise supplemental jurisdiction over state claims that are closely related to federal claims brought by litigants. Pursuant to the federal supplemental jurisdiction statute,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, supplemental jurisdiction does not provide grounds for a district court to hear claims otherwise barred under the Eleventh Amendment. *See Halderman*, 465 U.S. at 121.

> The Eleventh Amendment should not be construed to apply with less force to [pendent jurisdiction] than it does to the explicitly granted power to hear federal claims. . . . If we were to hold otherwise, a federal court could award damages against a State on the basis of a pendent claim. . . . [P]endent jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment.

*Id.* at 120–21. Wesley-Willis's state law causes of action are barred by the state's Eleventh Amendment immunity in their entirety.

## V. Failure to State a Claim

The Eleventh Amendment does not bar Wesley-Willis's causes of action under Title VII of the Civil Rights Act of 1964, the first and second causes of action alleged in the SAC. However, the School District moves to dismiss Wesley-Willis's hostile work

environment claim under Title VII under Rule 12(b)(6) for failure to state a claim.[2]  The School District contends that Wesle-Willis has not alleged facts sufficient to establish a hostile work environment claim.  (ECF No. 20 at 2).  The School District asserts that "[t]he allegations [of the SAC] are either so general, conclusory and lack[ing] specificity or have nothing. . . to do with a hostile work environment."  (ECF No. 20-1 at 15).  Wesley-Willis contends that the allegations set forth in the SAC "show[] a continuous pattern of events, which . . . comprise a constant and continuous stream of actions/conduct by Defendant amounting to . . . a hostile work environment."  (ECF No. 21 at 14).

Title VII guarantees employees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult."  *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986).  Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

A prima facie case for a hostile work environment under Title VII requires a plaintiff to show (1) she was subjected to verbal or physical conduct because of her race or gender; (2) the conduct was unwelcome; and (3) the conduct "was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004); *see also Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 871 (9th Cir. 2001).  The alleged conduct must establish that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted) (quoting *Meritor Sav. Bank*, 477 U.S. at 65)).  "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term,

_____

[2] The School District does not move to dismiss the first cause of action, also brought under Title VII of the Civil Rights Act of 1964, for failure to state a claim under Rule 12(b)(6).

condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank*, 477 U.S. at 67. "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21–22). "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000).

In *Vasquez v. Cty. of Los Angeles*, the Ninth Circuit Court of Appeals determined that an employer was entitled to summary judgment on a hostile work environment claim in which the employee provided evidence that his supervisor had yelled at him on a few occasions, made false complaints against him, and made two racially offensive remarks in the span of approximately one year. 349 F.3d at 643–44. The Court found that the conduct was "less frequent, less severe, and less humiliating" than the conduct in cases in which the Court had previously determined to create a hostile work environment. *Id.* at 644.

In this case, Wesley-Willis does not specify the basis on which she was discriminated against under Title VII. However, Wesley-Willis alleges that she is a "black female." (ECF No. 18 at ¶ 6). Accordingly the Court concludes that the hostile work environment claim is premised on discrimination based on race and gender. The SAC provides factual allegations about administrative actions the School District took in relation to Wesley-Willis over a period of approximately two years, including demoting Wesley-Willis, asking Wesley-Willis to leave a conference, demanding that Wesley-Willis apologize to her staff members, and denying her promotions. (ECF No. 18 ¶¶ 87, 11, 30). Although the factual allegations of the SAC support the conclusion that the School District took negative employment decisions with respect to Wesley-Willis and that Wesley-Willis was unhappy with the employment relationship, the allegations of the

SAC do not establish conduct supporting a hostile work environment claim under Title VII. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (stating that Title VII is not a "general civility code"). Wesley-Willis alleges that the superintendent referenced her race in one conversation in which the superintendent stated that her race would be "an asset in finding another position." *Id.* ¶ 25. However, this statement does not rise to the severity and frequency of conduct that would support a Title VII hostile work environment claim. *See, e.g.*, *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010) ("A violation is not established merely by evidence showing 'sporadic use of abusive language, gender-related jokes, and occasional teasing.'"); *Faragher*, 524 U.S. at 787 n.1 (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)) (stating that incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). As currently pleaded, the factual allegations of the SAC are insufficient to support a reasonable inference that Wesley-Willis was subjected to verbal or physical conduct because of her race or gender that was so severe or pervasive as to alter the conditions of her employment. The motion to dismiss the hostile work environment claim is granted for failure to state a claim under Rule 12(b)(6).

///
///
///
///
///
///
///
///
///
///
///

17cv1662-WQH-WVG

## VI.    Conclusion

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendant Cajon Valley Union School District (ECF No. 20) is granted in part and denied in part. The Second Amended Complaint is dismissed without prejudice with respect to the ADA claim (second cause of action), the hostile work environment claim under Title VII of the Civil Rights Act of 1964 (third cause of action), and all state law causes of action (fourth, fifth, sixth, seventh, and eighth causes of action).  The motion to dismiss is denied with respect to the discrimination claim under Title VII of the Civil Rights Act of 1964 (first cause of action).

Dated:  August 8, 2018

Hon. William Q. Hayes
United States District Court

17cv1662-WQH-WVG